# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **VICKY L. HORNER,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:08CV00026 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SOUTHWEST VIRGINIA** ) | By: James P. Jones |
| **REGIONAL JAIL AUTHORITY,** ) | United States District Judge |
| ) | |
| Defendant. ) | |

*Randal C. Eads, Eads & Eads, Abingdon, Virginia, for Plaintiff; Jim H. Guynn, Jr., and Susan A. Waddell, Guynn, Memmer & Dillion, Salem, Virginia, for Defendant.*

In this employment discrimination case under Title VII, the defendant employer has filed a Renewed Motion for Partial Summary Judgment. For the reasons stated, the motion will be denied.

I

Plaintiff Vicky L. Horner brings this action against her former employer, defendant Southwest Virginia Regional Jail Authority ("SVRJA"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e (West 2003). Horner worked for SVRJA as a detention officer in its Abingdon, Virginia, jail facility from October 6, 2005 to May 17, 2007. She avers that SVRJA created a work

environment hostile to women, in which women are discriminated against in hiring, disciplinary, and termination practices. As relevant to the present motion, she contends that she was subjected to a sexually harassing hostile work environment.

In its Renewed Motion for Partial Summary Judgment, SVRJA argues that it should be granted summary judgment on this claim because (1) the harassing incidents described by Horner were not pervasive and continuous enough to create a hostile work environment, or (2) even if the incidents were pervasive, SVRJA has a valid affirmative defense.

The plaintiff has failed to respond as directed by the court's Scheduling Order, which requires a response to a motion for summary judgment within 14 days after service. Nevertheless, the motion must be considered on its merits. *See Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("[T]he court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.").

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

An employer violates Title VII when an employee suffers sexual harassment that is "sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal citation omitted). To prevail on this hostile work environment claim, Horner must prove that there was "'(1) unwelcome conduct; (2) that [wa]s based on [her] sex; (3) which [wa]s sufficiently severe or pervasive to alter [her] conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002) (internal citation omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). SVRJA

contends that Horner has not shown that the alleged harassment was pervasive enough to be objectively hostile.

To determine whether a work environment is objectively hostile, there are several factors a court may consider including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *See id.* at 23; *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000). "[S]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

SVRJA argued in an earlier motion for summary judgment that Horner could not prove there was an objectively hostile environment at SVRJA. That motion was denied based on evidence that the harassment occurred frequently, that the comments alleged were sufficiently severe, that Horner endured a great deal of humiliation, and that the harassment reasonably affected her work. *Horner v. Sw. Va. Reg'l Jail Auth.*, No. 1:08CV00026, 2010 WL 597148, at *5-6 (W.D. Va. Feb. 18, 2010), *adopted*, 2010 WL 890135 (W.D. Va. Mar. 5, 2010). In the motion currently before the court, SVRJA makes essentially the same argument as it did before, except now it asserts

that Horner complains primarily of harassing statements made by persons she did not work with at the time of her alleged termination.

Horner was transferred to the day shift from the night shift in January of 2007 after she complained of comments made by her supervisor. She was then placed under the supervision of Lieutenant Melissa Mullins until the time of her termination. Horner admits that things "seemed to get better after that." (Horner Dep. 81.) But she testified that things took a turn for the worse in March 2007 when, because of accusations of a female inmate that Horner had let another female inmate put her hands down the front of Horner's pants, other officers began making derogatory remarks that Horner was homosexual. Then in May, Lieutenant Mullins called Horner into her office and told her that "[w]e never had a circle of gossip until you came here," and "when there's smoke, there's fire." (*Id.* at 90, 93.) Horner testified in her deposition that she had started crying but she does not remember what she said to Lieutenant Mullins, although she knows she did not quit. Lieutenant Mullins claimed, however, that Horner said, "I've had enough it's over. I'm going home. This job's not for me," and handed Lieutenant Mullins her keys and radio and left. (*Id.* at 94.)

SVRJA claims the remarks about Horner's sexuality were not gender-specific, emphasizing that they were made by female officers, and therefore by definition could

not constitute sexual harassment. However, remarks can be gender-specific "even if [the victim] is not subjected to sexual advances or propositions." *Smith*, 202 F.3d at 242. Under all of the circumstances, a trier of fact might find the comments were made because Horner was a woman. Furthermore, it is irrelevant whether the comments were made by female or male officers, as long as they are made because Horner was a woman. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-81 (1998).

Nor is it clear that the atmosphere of harassment she endured until January, only four months earlier, was too far in the past to be considered irrelevant. Horner testified that it was still an "open[] wound" for her and affected how she felt in March, April, and May. (Horner Dep. at 105.) Finally, although many of the comments she complains of happened before January 2007, she does make complaints about comments other than those relating to her sexuality after that date, including comments made to her on Mother's Day in May of 2007. For all those reasons, I find that the evidence is sufficient to raise a question of fact about whether Horner faced pervasive or severe harassment.

Alternatively, SVRJA argues that it is not vicariously liable even if there was objectively hostile harassment. An employer is only vicariously liable for the actions of its employees if a tangible employment action was taken by a supervisor of the

plaintiff or alternatively, if no tangible action was taken, the defendant may raise an affirmative defense by proving by a preponderance of evidence (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Smith*, 202 F.3d at 244.

SVRJA contends that Horner quit and was not fired, and thus no tangible employment action was taken. However, Horner testified emphatically that she did not quit. (Horner Dep. at 94.) Furthermore, in her deposition, Horner states that Lieutenant Mullins also began changing her posts because of the rumors, something that very much upset Horner. (*Id.* at 86.) Thus, there is a genuine question of fact of whether there was a tangible employment action taken.[1]

### III

For the reasons stated, it is **ORDERED** that the Renewed Motion for Partial Summary Judgment is DENIED.

---

[1] Even if SVRJA were to show that no tangible employment action was taken, the evidence does not prove beyond a factual dispute that SVRJA took reasonable care to prevent and correct harassment, nor that the plaintiff unreasonably failed to take advantage of preventive or corrective measures. SVRJA claims to have an anti-harassment policy, but it is not submitted into evidence with this or any other motion, nor are the employee handbook procedures for lodging complaints, which SVRJA argues Horner did not follow. Therefore, SVRJA has come woefully short of its evidentiary burden for this affirmative defense.

ENTER: September 10, 2010

/s/ JAMES P. JONES
United States District Judge